UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

_____

JOHN M. ANDERSON, et al.,

    Plaintiffs,

    v.                                      Case No: 23-CV-1430

WISCONSIN DEPARTMENT
OF CORRECTIONS, et al.,

    Defendants.
_____

**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I. INTRODUCTION………………………………………………………………………...4

II. STATEMENT OF FACTS………………………………………………………………...5

III. ARGUMENT……………………………………………………………………………...6

    A. Plaintiffs Are Likely To Succeed on Their Eighth Amendment Claims Because the Policies, Practices, and Procedures of Defendants Continue to Show a Deliberate Indifference to the Well-Being and Civil Rights of All WCI Inmates …..……………….6

    B. Plaintiffs and Members of the Plaintiff Class Satisfy the Remaining Preliminary Injunction Relief Factors……………………………………………………………10

        1. Plaintiffs and Members of the Plaintiff Class Will Suffer Irreparable Harm Absent Immediate Relief…………………………………….…………10

        2. The Balance of Hardships Tips Decidedly in Plaintiffs' Favor………………11

        3. A Preliminary Injunction is in the Public's Interest…………………………..12

IV. CONCLUSION…………………………………………………………………………...13

# TABLE OF AUTHORITIES

**Case Law**

*Brown v. Plata*, 563 U.S. 493, 131 S. Ct. 1910, 1928 (2011)……………………………………..5, 7

*Graham v. Med. Mut. Of Ohio,* 130 F.3d 293, 296 (7th Cir. 1997)……………………………...10

*Hernandez v. County of Monterey*, 305 F.R.D. 132, 152-53, 155 n. 138 (N.D. Cal. 2015.)……...7

*Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020)………………………………………………......7

*Orr v. Shicker,* 953 F.3d 490, 501 (7th Cir. 2020)………………………………………………..6

*Staffing Servs. Ass'n of Ill. v. Flanagan*, 2024 U.S. Dist. LEXIS 42102 (2024)………………...10

*Winter v. NRDC, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)………………..6

*Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)…………………………………………………..11

**Statutes**

18 U.S.C. §3626(a)(2)……………………………………………………………………….……6

**Miscellaneous References**

Fed. R. Civ. P. 65…………………………………………………………………………………..6, 12

## I. INTRODUCTION

Upon sentencing to confinement in the Wisconsin Department of Corrections (WIDOC), an inmate is aware that his liberties will be restricted, or deprived, for a certain length of time. The inmate will lose regular access to both family and freedoms.

Prior to arriving at their inevitable home for a duration of years, inmates in WIDOC go to Dodge Correctional Institution (DCI) for initial medical and mental health assessments. They are then classified and send to the institution where they will serve the remaining portion or portions of their sentence(s).

Asking an inmate about his medical and mental health needs informs an inmate that WIDOC is aware of their conditions. Further in-processing at their final institution will then show the inmate any medical and mental health resources available to them upon their arrival to their final institution.

The in-processing also discusses solitary confinement and other actions staff may take to ensure compliance with institutional rules.

What is not mentioned is that arrival at WCI in March of 2023 to present would result in a prolonged lockdown with no end in sight. These apparent issues, despite Defendants' knowledge, are only due to staffing issues. What is also not mentioned is that inmates will be unable to see their families. It is also not mentioned that while Defendants are responsible for the living conditions Plaintiffs' will experience daily, they will willfully dismiss any complaints by depriving all Plaintiffs of their basic human rights.

Unfortunately for Plaintiffs, Members of the Plaintiff Class, and all other inmates at WCI, past or present, the denial of human rights is what has been endured. Plaintiffs and Members of

the Plaintiff Class have had their medical and mental health needs willfully dismissed by Defendants. Complaints about living conditions have been willfully disregarded.

In a tragic turn, any Plaintiff or Member of the Plaintiff Class that requires assistance has had to seek treatment by threatening suicide or attempting suicide. Incomprehensibly, four inmates have committed suicide while incarcerated at WCI during this inexplicable prolonged lockdown.

## II. STATEMENT OF FACTS

Defendant WIDOC is an entity run by the State of Wisconsin. The Department states it, "works to protect the public through the constructive management of those placed in its charge. We offer education, programming, and treatment to persons in our care that enables them to be successful upon returning to the community. Our mission is to achieve excellence in correctional practices while fostering safety for victims and communities."[1]

WCI's Purpose Statement alleges, "The purpose of WCI is to provide inmates, staff, and the public with a safe and secure institution, *while encouraging positive growth and enabling inmates to successfully reenter society*."[2]

"Just as a prisoner may starve if not fed, he or she may suffer or die if not provided adequate medical care. A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society." *Brown v. Plata*, 563 U.S. 493, 131 S. Ct. 1910, 1928 (2011).

The policies and practices of Defendants directly contradict their own Purpose Statements.

---

[1] https://doc.wi.gov/Pages/Home.aspx

[2] https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/WaupunCorrectionalInstitution.aspx

At the end of March 2023, WCI went into an unexplained lockdown where recreational services and visitation was all but stopped.

During this lockdown, WCI inmates were exposed to rodent feces, birds living in their common areas, poor sanitation, poor dietary provisions, limited medical treatment, and limited mental health services. Additionally, visitation was denied, creating more isolation to all impacted Plaintiffs and Members of the Plaintiff Class.

The only recourse Plaintiffs and Members of the Plaintiff Class have had is to file suit. Local, National, and International coverage of the situation at WCI has not changed Defendants' behavior at any time.

### III. ARGUMENT

A preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker,* 953 F.3d 490, 501 (7th Cir. 2020).

Additionally, a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm…, and be the least intrusive means necessary to correct that harm." 18 U.S.C. §3626(a)(2).

Also, a preliminary injunction would bind the parties, their officers or agents, or individuals in active concert with the parties or their agents. Fed. R. Civ. P. 65(d)(2).

A party seeking a preliminary injunction "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.,* 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

> **A. Plaintiffs Are Likely to Succeed On Their Eighth Amendment Claims Because the Policies, Practices, and Procedures of Defendants Continue to Show a Deliberate**

**Indifference to the Well-Being and Civil Rights of All Plaintiffs and Members of the Plaintiff Class.**

To satisfy the first step, Plaintiffs must "demonstrate that [their] claim has some likelihood of success on the merits, not merely a better than negligible chance." *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020). Here, Plaintiffs and Members of the Plaintiff Class have satisfied this element.

Individual inmates who are incarcerated establish an Eighth Amendment violation warranting injunctive relief by showing that Defendants' policies, procedures, and protocols concerning the deprivation of rights – in their totality – constitute a deliberate indifference to a substantial risk of suffering serious harm.

Deliberate indifference may be shown by, *inter alia*, evidence of "systematic or gross deficiencies in staffing, facilities, equipment, or procedures. *Hernandez v. County of Monterey*, 305 F.R.D. 132, 152-53, 155 n. 138 (N.D. Cal. 2015.) Importantly, the key question in systematic cases focuses not on individual circumstances but rather on whether systematic deficiencies, "taken as a whole," subject people to a "substantial risk of serious harm." *Brown v. Plata*, 563 U.S. 493 (2011).

Here, evidence, including numerous issues surrounding the deprivation of rights by Defendants during the prolonged lockdown. Plaintiffs and Members of the Plaintiff Class have been deprived of basic medical and mental health needs. Additionally, visitations have been denied. The denial of these visitations impacts the mental well-being of any inmate housed under the responsibility of WCI.

The current policies, procedures, and protocols of WCI, and the actions of Defendants, have created a circumstance where Plaintiffs and Members of the Plaintiff Class are forced to request the subject Injunction due to Defendants' actions.

Defendants have been informed of the staffing shortage for a considerable amount of time. In fact, there were discussions about bringing in the National Guard to assist WCI and other WIDOC entities[3]. Based on information and belief, the offer of National Guard assistance was never utilized.

Despite their knowledge of the staffing shortage, and the knowledge of medical and mental health issues going untreated, Defendants have continued to precipitate the same negative environment they created.

Plaintiffs continue to be subjected to long-term lockdowns and unnecessary medical and mental health-related issues due to the actions of Defendants. Despite numerous suicides and national publicity surrounding this case, Defendants have made no effort to change the environment. In fact, the Governor of the State of Wisconsin requested an investigation by the Department of Justice. [4] As it stands at the time of writing this request, eleven (11) workers have been suspended in the probe.

These suspensions are only the tip of the iceberg. There is higher level involvement through Defendant Hepp and Defendant Carr regarding their inactions to address the staffing shortages and failing to address the issues of rights violations within WCI.

First, there is no serious dispute that Plaintiffs and Members of the Plaintiff Class have had their Civil Rights violated. They have been on a prolonged lockdown since March of 2023. Visitations have been denied. Medical and mental health services have been limited. Food distribution has included bagged meals without concerns of dietary restrictions. Bird and rodent

---

[3] https://wisconsinwatch.org/2023/12/should-the-national-guard-step-in-at-wisconsins-understaffed-prisons-some-think-so/

[4] https://spectrumnews1.com/wi/milwaukee/news/2024/03/08/wisconsin-prisons-lockdown-investigation

feces in cells, poor sanitation, and other unhealthy living conditions are additional issues in the present case.

Inmates at WCI have complained since the lockdown began. These complaints, as well as the stories depicted in the media, have not changed Plaintiffs' circumstances.

Second, through Defendants' systematic dismissal of complaints, disregard of Plaintiffs' safety and well-being, and numerous suicides that have taken place since the lockdown, show Defendants' objective and subjective deliberate indifference to the inmates they are duty bound to protect. Based on information and belief, the evidence shows Defendants have been aware, and are aware, of their staffing shortages. It also shows Defendants have been aware, and are aware, of the rights violations taking place in WCI. Defendants have failed to provide adequate care for the inmates of WCI and, absent this Honorable Court's intervention, Plaintiffs' and Members of the Plaintiff Class will continue to suffer.

Initially, Defendants indicated that the lockdown was due to behavioral issues. [5] Specifically, Defendant WIDOC stated, "There were multiple threats of disruption and assaultive behavior toward staff or other persons in our care, but there was not one specific incident that prompted the facility to go into modified movement." *Id.*

Then, Defendant WIDOC stated, "the lockdown has been in response to staffing shortages and behavioral issues among prison residents." [6]

---

[5] https://www.wpr.org/health/inside-waupun-correctional-institutions-nightmare-lockdown

[6] https://wisconsinexaminer.com/briefs/third-death-at-waupun-prison-reported/#:~:text=The%20DOC%20says%20the%20lockdown,old%20Dean%20Hoffman%20in%20June

Taken together, these facts clearly establish violations of the Eighth Amendment surpass the "likelihood of success on the merits" standard needed for this element of a preliminary injunction.

**B. Plaintiffs Satisfy the Remaining Preliminary Injunction Factors**

    **1. Plaintiffs and Members of the Plaintiff Class Will Suffer Irreparable Harm Absent Relief.**

Irreparable harm is "harm that 'cannot be repaired'…." *Graham v. Med. Mut. Of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997). Plaintiffs must show they will "likely suffer irreparable harm absent obtaining preliminary injunctive relief." *Id.*

Plaintiffs will suffer irreparable harm absent an injunction. The allegations here will continue to persist without court intervention. All WCI inmates will continue to be subjected to substandard living conditions unless this Honorable Court insert themselves into the daily operations at WCI.

Defendants requested the Department of Justice to investigate illegal drugs and other prohibited items making their way into WCI during the lockdown. Defendants have been aware of the substandard conditions they force Plaintiffs and Members of the Plaintiff Class to live in and have taken *zero* steps to correct the daily deprivation of rights WCI inmates experience.

Additionally, Plaintiffs are currently unable to have any confidence in the confidentiality of communications with Plaintiffs' counsel.

On or about February 28, 2024, Mr. Justin Welch, a named Plaintiff, was written up by a Correctional Officer at WCI. The Conduct Report stated:

> "I came to a letter written by inmate Welch, Justin 579750 addressed to Story Law Firm Attorney Lonnie Story. [i]n the contents of the letter that Welch wrote he goes on to make the following written statement, 'BTW they are going to place me by Danta Harris when I

> get out in the NCH I will have no choice but to fight him again. This is what the WCI does this time I will hurt him."

Under the First Amendment, prisoners have a right to be free from interference with legal mail. *Wolff v. McDonnell*, 418 U.S. 539, 577, 94 S.Ct. 2963, 41 L. Ed. 2d 935 (1974). Prison officials may inspect, *but may not read*, certain types of mail. *Id.* (Emphasis added.). The Court in *Wolff* specifically stated correspondence between an inmate and an attorney is confidential and, as a result, prison officials *may not* read the contents of legal mail. *Id.*

Every circuit to address the question, whether under the free speech/access-to-court line of cases or the right to counsel in criminal matters, agrees that reading of a prisoner's correspondence with his or her attorney is forbidden and transgresses constitutional boundaries. In *Lemon v. Dugger*, (931 F.2d 1465 (11th Cir. 1991) the Eleventh Circuit stated the proposition in no uncertain terms: **it is "a violation of an inmate's constitutional rights for the prison officials to read legal mail**. (Emphasis added)

The clear violation of the First Amendment, and the confidentiality between counsel and client, is reprehensible. It is even more reprehensible that this violation is used as a subterfuge to then retaliate against a named Plaintiff in the subject litigation.

Without the ability to communicate with counsel, or a freedom to ensure that their Constitutional rights are intact, intervention by this Honorable Court is necessary to prevent irreparable harm.

### 2. The Balance of Equities Tips Decidedly in Plaintiffs' Favor.

The balance of equities favors Plaintiffs. Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. 7, 24 (2008).

In balancing the harms, the test is done on a "sliding scale": If Plaintiffs are more likely to win on the merits, the balance of the harms need not weight as heavily in their favor." *Staffing Servs. Ass'n of Ill. v. Flanagan*, 2024 U.S. Dist. LEXIS 42102 (2024).

Plaintiffs' interest in preventing further deprivation of rights afforded to them under the Eighth Amendment is at the forefront of this case. In sharp contrast to the hardships experienced by Plaintiffs, Defendants' hardships are minimal. They will simply be required to establish or revise plans regarding staffing, submit reports, and change internal policies and procedures. These fixes are well within the legal and financial capabilities of Defendants.

Additionally, these tasks will not impose a significant burden on Defendants.

Moreover, requiring Defendants to adjust their policies, practices, and procedures now may result in a reduction in future costs as it may insulate Defendants from additional litigation stemming from other cases likely to arise out of the conditions at WCI.

Therefore, Defendants would have to take little steps compared to the harms already experienced by Plaintiffs and Members of the Plaintiff Class. As a result, Plaintiffs have satisfied this element.

### 3. A Preliminary Injunction is in the Public Interest

Protecting prisoners from living conditions that violate their Constitutional Rights is inarguably in the public interest. Immediately implementing measures to ensure no further rights are violated benefits the public in multiple ways. First, taxpayers in the State of Wisconsin know their money is going to proper care of inmates versus settling lawsuits.

Second, eliminating insufferable living conditions will ensure the true purpose of WIDOC's mission statement of, "We offer education, programming and treatment to persons in our care that enables them to be successful upon returning to the community." [7]

Lastly, ensuring all Plaintiffs and Members of the Plaintiff Class can receive proper medical care and mental health services will prevent any additional unnecessary loss of life within the institution.

Therefore, the requested injunction is in the public's interest.

## CONCLUSION

Therefore, since Plaintiffs and Members of the Plaintiff Class have successfully satisfied the elements necessary for a Preliminary Injunction to issue under Fed. R. Civ. P. 65. Intervention by this Honorable Court is required due to Defendants' policies, practices, and procedures over the past year continuously infringing on the civil rights of Plaintiffs and Members of the Plaintiff Class. The deliberate indifference shown by Defendants has resulted in suicides, suicide attempts, and physical and psychological injury to all WCI inmates.

Plaintiffs and Prospective Members of the Plaintiff Class request the following:

1. Restore WCI to full movement, thus ending the lockdown that has been in place for almost one full year;
2. Review all Investigation Documentation, including Department of Justice Investigation documentation, pertaining to WCI; and
3. Have an external entity assess the current state of WCI and establish a plan to address the following:

---

[7] https://doc.wi.gov/Pages/Home.aspx

a. Staffing;

b. Environmental Conditions;

c. Access to Medical, Mental Health, and Dental services;

d. Proper distribution of all medications;

e. Dietary-related issues;

f. Access to visitation; and

g. Any other pertinent matters relating to the human rights of all WCI inmates.

RESPECTFULLY SUBMITTED,

Dated: March 21, 2024.

Electronically signed by:

*/s/ Lonnie D. Story*
Lonnie D. Story, Esquire
Attorney for Defendant
STORY LAW FIRM, LLC
Wis. Bar #1121459
732 N. Halifax Avenue, #301
Daytona Beach, Florida 32118
(386) 492-5540
lstorylaw@gmail.com